ILLUM INCORPORATED, Respondent, *v.* AMERICAN MACHINE AND FOUNDRY COMPANY, Appellant.

First Department, April 19, 1929.

*Lloyd Paul Stryker* of counsel [*H. H. Ramsay* with him on the brief], for the appellant.

*C. Frank Reavis, Jr.*, of counsel [*Martin D. Jacobs* with him on the brief; *Chadbourne, Stanchfield & Levy*, attorneys], for the respondent.

MARTIN, J. The plaintiff demands judgment for the sum of $96,386.64, the amount of an installment alleged to be due under an agreement between the parties, less deductions of $3,631.36.

The complaint sets forth that a contract was made between the plaintiff and the defendant by the terms of which it was provided that the defendant was to pay to the plaintiff $100,000 during the first year from and after October 18, 1927, the date of the contract. Performance of all the conditions of the said contract on its part to be performed is then alleged by plaintiff.

By the terms of the agreement, sole and exclusive right to manufacture and sell throughout the world machines embodying certain patents owned by the plaintiff was assigned and granted to the defendant. The agreement provides for the payments to be made for such rights out of the profits.

It is asserted by the plaintiff that the contract imposes an unconditional obligation upon the defendant to pay the sum of $375,000 irrespective of whether there were profits as defined therein.

The 4th paragraph of the agreement contains the provision with reference to compensation to be paid the plaintiff. It provides: " 4. As compensation to Licensor for the rights granted and to be granted hereunder, Licensee agrees to pay Licensor as follows: "

It will be noted that the agreement then provides for the sole compensation to be paid the plaintiff by defendant:

" A. The net profits of the business of manufacturing and selling machines hereunder (net profits as hereinafter defined) until an aggregate total amount has been paid by Licensee to Licensor as aforesaid of Three Hundred Seventy Five Thousand Dollars ($375,000). For the purpose of this agreement, net profit is hereby defined and shall mean the difference between the net sales price per machine and the sum of the following items (a) to (d) inclusive:

" (a) Cost of direct shop and engineering labor, plus one hundred per cent;

" (b) Cost of purchased material, plus ten per cent;

" (c) Twenty-five per cent of the net selling price as an allowance for selling expenses including advertising and installation;

" (d) Ten per cent of the net selling price to cover the cost of preparation for manufacture.

" As to machines purchased from Licensor as contemplated in

Paragraph 3 hereinabove, net profit is hereby defined and shall mean the difference between the net sales price per machine and the sum of the following items (x) to (z) inclusive:

" (x) Cost of machine;

" (y) Twenty-five per cent of the net selling price as an allowance for selling expenses including advertising and installation;

" (z) Ten per cent of the net selling price to cover the cost of preparation for manufacture."

The method to be used by the defendant in accounting to the plaintiff is then set forth. This is followed by a clause which says: " Licensee guarantees to pay to Licensor the *aforesaid* sum of Three Hundred Seventy-five Thousand Dollars ($375,000) in the following manner, to wit: at least One Hundred Thousand Dollars ($100,000) in the first year from and after the date of this contract."

The contract also provides how the subsequent payments were to be made. This paragraph sets forth how the aforesaid profits were to be paid. Although it does not use the word " profits," it says " the aforesaid sum." The aforesaid sum refers to the profits. This is not a guaranty that there will be a payment of $100,000; it is a guaranty that at least $100,000 of the profits shall be paid to plaintiff in the first year.

If this paragraph is to be construed as a guaranty of payment then it is a guaranty of the payment of $375,000 by the end of the third year. By the terms of the contract the sole compensation plaintiff was to receive was a share of the net profits of the business and the net profits earned during the first year to the extent of $100,000 was to be paid to the plaintiff. The obligation to pay was based on the assumption that there would be profits.

The defendant contends, and we agree with that contention, that the plaintiff must allege and prove that there were at least $100,000 in net profits before the plaintiff is entitled to recover that amount.

In *Conti* v. *Cohen, Inc.* (197 App. Div. 302) the court held that where compensation was to be $100 per week and twenty per cent of the net profits per annum earned by the defendant, a complaint was defective that failed to allege that there were profits. It was there said: " We are of the opinion that the complaint is insufficient in that it does not show that any profits were earned by the defendant during any accounting period. It is argued theoretically by the respondent that an allegation that there were profits is necessarily implied in the allegations made, but we think not and that it was incumbent upon the plaintiff to show that profits were earned and not paid over as agreed."

The plaintiff having failed to allege that there were profits from

which the payment of $100,000 could be made, the complaint fails to set forth a cause of action, and the order appealed from should be reversed, with ten dollars costs and disbursements, and the motion to dismiss the complaint for insufficiency granted, with leave to plaintiff to serve an amended complaint upon payment of said costs.

Dowling, P. J., Finch, McAvoy and Proskauer, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion granted, with leave to plaintiff to serve an amended complaint within twenty days from service of order with notice of entry thereof upon payment of said costs.